CHATTANOOGA *v.* NORMAN.

(*Knoxville.*   November 11, 1892.)

MUNICIPAL CORPORATIONS.   *Validity of stock ordinance.*

A municipal corporation has power to prohibit, under suitable penalties, the running at large of stock within a specified portion, less than the whole, of its territory.   Such ordinance is within the police power of the corporation.   It is not invalid as vicious class legislation.

Cases cited and approved: Knoxville *v.* King, 7 Lea, 441; 96 U. S., 521; 97 Mass., 221.

FROM HAMILTON.

Appeal in error from Circuit Court of Hamilton County.   JOHN A. MOON, J.

SPURLOCK & LATIMORE for Chattanooga.

CLIFT & SMITH for Norman.

SNODGRASS, J.   An ordinance of the city of Chattanooga provides that:

"It is unlawful, and is hereby declared to be a nuisance, for any animal of the horse, mule, cattle, sheep, swine, or goat kind to be found running at large on the open lots, streets, alleys, lanes, or commons within the corporation, except the territory south of Montgomery Avenue, east of the

East Tennessee, Virginia and Georgia Railroad track, and west of Cameron Hill."

Other ordinances, not necessary to quote, make it the duty of the pound-keeper to impound animals found running at large within this limit, and hold them until reclaimed by the owner, after payment of penalty and charges, and for sale in default thereof on due notice.

The defendant in error owned a cow, which was found running at large in that part of the city embraced in the ordinance, and the cow was taken and impounded pursuant thereto. He demanded possession of his cow, which was refused unless he would pay the prescribed penalty of one dollar and fifty cents for one day's feeding of the cow. This he declined to do, and brought this action of replevin, obtaining judgment. The city appealed in error, and the only question presented is as to the validity of the ordinance quoted.

The Circuit Judge makes the judgment show that it is "based on the fact that the cow ordinance does not include all of the corporation of the city of Chattanooga, but a certain portion, and is therefore null and void as class legislation."

If that view be correct, the judgment is sustained; otherwise, it is erroneous.

The power of the city, acting through its Board of Mayor and Aldermen, to pass an ordinance making unlawful, as a nuisance, the running at large of such animals as are described in the ordinance being considered, is clear. That it would

Chattanooga *v.* Norman.

fall within the general police power of a munici-
pality is everywhere admitted, and is nowhere bet-
ter settled than in this State. *Knoxville* v. *King,*
7 Lea, 441.

There is no doubt, therefore, that had the ordi-
nance covered the whole city it would have been
valid. The question is, Must it be invalid because
it does not, and is it class legislation because of
its limited application?

We hold it is not class legislation in any sense.
It is not intended to benefit or burden anybody
within or without the territory included. No one
living in it is permitted to allow his stock to run
at large there any more than one living without
the limit. It applies to everybody, exempting
none from its operation, and making no distinc-
tion as to stock, either as to residence or owner-
ship. Had the ordinance provided that those liv-
ing within the limits to which the ordinance ap-
plied should not have been required to observe it,
or that only those living within the limit should
have been required to observe it, it would have
been open to the objection made against it, but
the ordinance has no such feature. It is general
in its application to all stock found running at
large in the specified places within the prescribed
territory, come whence and belong to whom it
may. Nor can the fact that certain territory of
the city does not fall within the limit prove that
such territory was benefited or burdened by the
non-inclusion. The ordinance simply does not af-

fect it in fact, and cannot be held to injure or benefit it in law.

It remains, therefore, to inquire whether a city ordinance, passed under its police power, must apply not only to all the people of a city who may violate it, but must also cover all the territory of a city, and make every thing unlawful in *every* part of it which it may attempt to prohibit in *any.* If so, what becomes of ordinances establishing "fire limits," "laundry limits," "slaughter-house and powder-house limits," regulating speed of trains in certain corporate localities, providing for guards and gates at railroad crossings, and all the innumerable objects of special provision for particular purposes not essentially deserving or capable of other than special regulation? The same power which authorizes exclusion of slaughter-houses, etc., from a particular locality and location of them in another within the same city, or defines in what sections of a city all houses must be of brick, stone, or metal, declaring that elsewhere in the corporation they may be of wood, authorizes a municipality to say that the running of stock at large shall not be permitted in certain localities, while it makes no provision for others which it deems, for any reason, does not need or require such regulation.

It could not follow that, because the municipality might not prohibit stock in every quarter of its area, much of which might not be improved, or even laid off into streets and alleys, it

must therefore permit it to browse at will in the yards of its public buildings, pasture its squares and parks, or defile the approaches to its schools and churches.

It is not meant by this to say that the area of Chattanooga not included in the "stock limit" is unimproved in whole or in part—the fact does not appear in this record—but the illustration, as a general one, is used to show how necessary may be such a prohibition in one part of. a city and how unnecessary in another.

It will be borne in mind that such ordinances as the one under consideration do not make certain acts, done anywhere in a corporation, offenses, and then provide for punishment of only particular persons out of a number who may commit or permit the prohibited acts, or provide that certain acts or omissions are offenses everywhere within the corporate limits, but punishable only when committed at a particular place therein, but, on the contrary, they establish certain "limits"—as, "fire limits," "laundry limits," "slaughter-house limits," etc.—and make the doing of certain acts therein unlawful. The territory is limited, but the prohibition is general. It permits no one to do the acts prohibited within the limit. "Stock limits" fall strictly and properly within this classification. Indeed, it must be remembered that the stock law had its origin in a limit. The earlier acts and ordinances on that subject prohibited the running at large of certain kinds of stock in certain spec-

ified places, as in streets and highways. It was never thought then that they were bad because they did not include all stock and in all places. So here there is a limit, even within the limited territory. No one is prohibited from keeping the stock described in the ordinance or letting it run in any inclosure. It is only a prohibition against running at large in certain places, designated as streets, alleys, etc.

So much by way of general statement and discussion of the question. Coming now to the authorities, it is clearly established and sustained.

The police power of a State, or a municipality as an arm of the State, extends to the making of such laws and ordinances as are necessary to secure the safety, health, good order, peace, comfort, protection, and convenience of the Stâte or municipality. It not only permits passage of general laws for the entire State or municipality, but special ones, applicable to particular localities, highways, rivers, streets, and limits of a territory or a city; and, of these and the necessity for local application, the law-making power is the judge; and, if not in violation 'of a fundamental law, or unreasonable, are everywhere upheld. Cooley on Const. Lim., Ch. XVI., and cases cited. See, also, *Ibid.*, 246, 247, and cases cited (5th Ed.); Am. and Eng. Ency. of Law, Vol. XV., page 1170; Vol. XVII., pages 248 to 255; Vol. XVIII., pages 747, 748, and cases cited; *Railroad Co.* v. *Richmond*, 96 U. S., 521 (Lawyers' Co-op. Ed.; Book 24, page 734).

The cases cited cover all classes of general and limiting ordinances, and maintain the doctrine here announced to the fullest extent. In the last case, the Supreme Court of the United States says: "All laws should be general in their application, but all places within the same city do not necessarily require the same local regulation." The question being considered was an ordinance prohibiting a particular railroad company, by name, from using engines on a particular street, designated by name, of the city of Richmond. The ordinance was upheld, the Court saying further: "While locomotives may, with great propriety, be excluded from one street, or even from one part of a street, it would sometimes be unreasonable to exclude them from all. It is the special duty of the city authorities to make the necessary discrimination in this particular."

In answer to the objection that the particular railroad company was alone named in the ordinance, and that it was therefore special and invalid, the Court said: "No other person or corporation has the right to run locomotives in Broad Street. Consequently, no other person is or can be in like situation, except with the consent of the city. On this account, the ordinance, while apparently limited in its operation, is, in effect, general, for it applies to all who can do what is prohibited. Other railroad companies may occupy other streets, and use locomotives there, but other streets may not be situated like Broad Street;

neither may there be the same reasons why steam transportation should be excluded from them."

Then follows the first quotation we made from the case, as to general law and application only in particular locality.

This case is a very advanced one, because it not only upheld an ordinance for the exclusion of a nuisance from a particular street, but named the party forbidden to commit it. The general exclusion of engines or of stock from particular streets or localities falls far short of this in the terms in which they are enacted, but this was upheld as falling within, although it seemed to go beyond, the principle.

The error of a contrary conclusion is based upon the idea that there is some inequality, because the ordinance applies only in a particular locality; but this is most tersely and definitely answered by a Massachusetts case, quoted in citations heretofore referred to, that such an ordinance "is not unequal, because it applies to all persons doing the forbidden act within the territory designated, whether inhabitants of that locality or not." *Commonwealth* v. *Patch*, 97 Mass., 221.

We hold, therefore, that the ordinance in question is valid, and the judgment in this case is erroneous. It is reversed, and judgment will be entered here in favor of the city, and for all costs.