PORTER *et al. v.* CITY OF PARIS *et al.*

(*Jackson,* April Term, 1947.)

Opinion filed May 3, 1947.

AARON BROWN, of Paris, for complainants-appellants.

VAN DYKE & DUNLAP, of Paris, for defendants-appellees.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The question presented here is the right of the City of Paris to install parking meters on the streets of the city. The complainants, as taxpayers of the city, filed their bill in the chancery court of Henry County seeking to enjoin the installation of said meters. The defendants filed separate answers, and exhibits were filed and also a stipulation. At the hearing on the motion for a temporary injunction or restraining order, the chancellor denied the application for the relief sought and dismissed complainants' bill .

The complaint is made that the contract for the meters was contrary to public policy and void, and that the fees charged for parking rights were a municipal tax which was not authorized by the city charter and was a privilege not taxable by the State.

The installation of the parking meters was authorized by a resolution adopted by the city council, and in accordance therewith the city entered into a written contract with the defendant, Duncan Meter Corporation, for the installation of 300 parking meters to be installed in the city, which agreement purported to be on a rental basis until such time as the amount of $75 for each meter was realized from the revenue of the meters, and after which time the Meter Corporation was to give to the City a bill of sale, free and unemcumbered, for the meters.

The courts of this State have given sanction to broad powers of regulation and a wide discretion in the exercise of the police power as vested in municipalities.

In *Spencer-Sturla Co.* v. *City of Memphis,* 155 Tenn. 70, 79, 290 S. W. 608, 611, the Court said that "exercise of the police power, otherwise valid and constitutional, cannot be defeated because property rights are taken or destroyed." See also *Steil* v. *City of Chattanooga,* 177 Tenn. 670, 152 S. W. (2d) 624.

In *Chattanooga* v. *Norman,* 92 Tenn. 73, 78, 20 S. W. 417, 419, the Court, citing with approval from Cooley on Constitutional Limitations, Chapter 16, and cases cited, said: "The police power of a state, or a municipality as an arm of the state, extends to the making of such laws and ordinances as are necessary to secure the saftey, health, good order, peace, comfort, protection and convenience of the state or municipality. It not only permits passage of general laws for the entire state or municipality but special ones applicable to particular localities, highways, rivers, streets and limits of a territory or city; and of these, and the necessity for local application, the lawmaking power is the judge and, if not in violation of a fundamental law, or unreasonable, they are everywhere upheld."

█ Furthermore, complainants have not shown that they will be so affected as to entitle them to raise the question as to whether the contract was contrary to public policy. A taxpayer is not authorized to maintain a suit simply because he is a taxpayer. He must show that the effect of the legislative act would be to increase his burden of taxation, or to divert a fund from the purpose of which it was intended by law, or to affect him differently than other citizens or taxpayers in a similar position.

In *Patton* v. *City of Chattanooga*, 108 Tenn. 197, 65 S. W. 414, complainants, as taxpayers, filed a bill to enjoin the City of Chattanooga from granting an exclusive franchise for the operation and construction of a telephone and electric plant in the city, alleging the ordinance was invalid. The Court, in discussing the authority of complainants, as taxpayers, to maintain the suit, said at pages 220 and 221 of 108 Tenn., at page 420 of 65 S. W.:

"(1) The bill not alleging that complainants will suffer any injury not common to the body of the citizens, complainants have no such interest in the subject-matter as gives them a status to make any of the questions attempted to be made by the bill.

"(2) The complainants cannot, in any event, make the question that the city has no power to grant an exclusive franchise.

"Status of Complainants. The bill is filed by citizens and taxpayers as such. It does not show that they can possibly suffer any injury which is not common to the body of the citizens, and complainants show no special injury or interest, and therefore cannot be heard to question the validity of the ordinance; and there is consequently no judicial question."

In *Kentucky-Tennessee Light & Power Co.* v. *Dunlap*, 181 Tenn. 105, 116, 178 S. W. (2d) 636, 640, this Court.

quoted with approval from 11 Am. Jur., Constitutional Law, sec. 111, as follows: ''Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights.''

■ One who asserts that a particular statute is invalid must also assert that he has sustained or is in immediate danger of sustaining, some direct injury as the result of its enforcement, and not merely he suffers in some indefinite way in common with people generally. See *Tennessee Gas Co.* v. *McCanless,* 184 Tenn. 387, 199 S. W. (2d) 108, and *Coleman* v. *Henry,* 184 Tenn 550, 201 S. W. (2d) 686, this day decided.

The validity of the use of parking meters has been upheld with few exceptions by the courts of the various states. Practically all of these cases have considered the question as to whether the fees charged for parking rights constitute a tax.

The case of *Foster's Inc.,* v. *Boise City,* 63 Idaho 201, 118 P. (2d) 721, is analogous in all points to the cause under consideration. On February 15, 1940, Boise City entered into an agreement with the Dual Parking Meter Company, a corporation, providing for the installation of 577 penny-nickel automatic parking meters. The agreement provided for a trial period until May 1, 1940. If the city decided to purchase, the city agreed to pay for the equipment a sum equal to 75 per cent of the income received from the operation of the meters until paid for at the rate of $61 per meter, and title was to remain in the company until payment in full.

In March, 1940, the city passed an ordinance providing regulations relative to the parking of vehicles on the public streets, for the installation, regulation, control and use

of parking meters; for the establishment of parking meter zones on certain city streets in the business districts; prescribing the rights of owners or operators of vehicles within the zones; and for the enforcement, and penalties or violation, of the ordinance.

The action was instituted by O. J. Foster, operating as Foster's Inc., "General furniture business, furniture dealer," lessee of the premises, and C. B. Little, owner of the building, to perpetually enjoin defendants from in any manner enforcing the provisions of the parking meter ordinance, carrying out or exercising any of the provisions of the agreement, from purchasing, using, or operating parking meters upon the streets of defendant city, and especially in front of the premises of plaintiffs.

In affirming the case, the Supreme Court of Idaho said (63 Idaho at pages 210, 211, 118 P. (2d) at page 725):

"When a street is acquired, either by dedication or condemnation, and opened for traffic, the municipality has the power and authority to police the same and regulate the traffic thereon. Sec. 49-1141, I. C. A.

" 'It will be seen from the foregoing that the power of cities and villages in this state over the streets is exclusive and unlimited.' Carson v. City of Genesee, 9 Idaho 244, 253, 74 P. 862, 864, 108 Am. St. Rep. 127."

The Court further said (63 Idaho at pages 215, 216, 118 P. (2d) at page 727):

"And again in City of Phoenix v. Moore, [57 Ariz. 350,] 113 P. (2d) 935, 937, the Arizona court held:

" 'Parking meters . . . have been installed . . . for the purpose of policing and regulating such traffic during the busiest parts of the day. . . . this automatic device does the work that was formerly done by police officers under city ordinances. . . the meters are mechanical policemen. . . . Clearly, the ordinance

has for its purpose the regulation of a perplexing problem to cities and towns, created largely by the advent of motor vehicles'

"In *City of Columbus* v. *Ward*, 65 Ohio App. 522, 31 N. E. (2d) 142, 144, the court sustained a parking meter ordinance. The Minnesota supreme court, in the case of *Hendricks* v. *City of Minneapolis*, 207 Minn. 151, 290 N. W 428, 430, in speaking of the purchase of parking meters for the city, held, 'Municipalities have the power to purchase equipment and finance it by the revenue derived from its use.'

"The state of Oklahoma in the case of *Ex parte Duncan*, 179 Okl. 355, 65 P. (2d) 1015, 1017, upheld the use of parking meters, saying:

" 'Without the right to prohibit or regulate parking no orderly passage of vehicles could be accomplished. Therefore, we conclude that the parking meter ordinances do not violate the statute above quoted, inasmuch as they do not affect a right which can be called a free use of the highways. Moreover, the statute contemplates such regulations to be included in the exceptions therein expressed.' "

Again, the Court said (63 Idaho at pages 218, 219, 118 P. (2d) at page 728):

"Effective exercise of the police power necessarily involves expenditures in many ways. The means and instrumentalities, by and through which the supervising powers of the policing authority are brought to bear on the subject to be regulated, involve costs and expenses. It is only reasonable and fair to require the business, traffic, act, or thing that necessitates policing, to pay this expense. To do so has uniformly been upheld by the courts. On the other hand, this power may not be resorted to as a shield or subterfuge, under which to enact and

enforce a revenue-raising ordinance or statute. Cooley on Taxation, 4th Ed., sec. 1680; 3 McQuillin, on Munic. Corp. sec. 987.

"The fact, that the fees charged produce more than the actual cost and expense of the enforcement and supervision, is not an adequate objection to the exaction of the fees. The charge made, however, must bear a reasonable relation to the thing to be accomplished." (Citing many cases.)

In the present cause the chancellor found that the resolution was intended as a means for the regulation of traffic and parking; that it was not intended for the purpose of raising revenue for the general fund and use of the city; and that the amounts collected are not disproportionate to the expenses involved.

■ ■ We, therefore, conclude that the contract entered into by the City of Paris with the Meter Corporation was not contrary to public policy. We further conclude that the fees imposed are proper for the installation, regulation and maintenance of the parking meters and do not constitute a tax.

On account of the fact that the question presented here has never been before our Court; we have not disposed of the cause on the ground that complainants have no right or standing to maintain the suit.

We have considered all the assignments of error and they are overruled. The decree of the chancellor is affirmed.

All Justices concur.