**STATE of Tennessee ex rel. BROWN-ING–FERRIS INDUSTRIES OF TENNESSEE, INC., Plaintiff/Appellant,**

**v.**

**BOARD OF COMMISSIONERS OF KNOX COUNTY, TENNESSEE, and Knox County, Tennessee, Charles W. Burson, the Attorney General of the State of Tennessee, Defendants/Appellees.**

Court of Appeals of Tennessee, Western Section at Knoxville.

Nov. 20, 1990.

Application for Permission to Rehear Denied by Supreme Court Feb. 4, 1991.

Petition to Rehear Denied by Supreme Court, March 18, 1991.

John K. King, Lewis, King, Krieg & Waldrop, Knoxville, for Browning–Ferris Industries of Tennessee, Inc.

Dale C. Workman, Knoxville, Knox County Law Director, for Knox County.

TOMLIN, Presiding Judge (Western Section).

Plaintiff, Browning–Ferris Industries of Tennessee, Inc., ("BFI") has appealed from a judgment of the Circuit Court of Knox County. The trial court denied plaintiff's request for issuance of a writ of mandamus [1] directing defendants, Knox County Board of Commissioners ("Board" or "Commissioners") to affirm the action of the Metropolitan Planning Commission ("MPC") which approved, with conditions,

1. Injunctive relief was also prayed for.

as a use permitted on review, BFI's application for a permit to operate a sanitary landfill in Knox County. BFI presents five issues on appeal for our consideration: (1) whether or not the Board was legally constituted to exercise appellate jurisdiction over the action of the MPC in granting the permit for a use permitted on review; (2) whether or not certain amendments to the Knox County Zoning Resolution were adopted in accordance with the statutory requirements for amending a zoning resolution; (3) whether or not by expending substantial funds in reliance upon existing zoning regulations BFI acquired a vested right to develop a sanitary landfill; (4) whether or not the amendments to the zoning resolution as adopted were invalid since they created a *de facto* total exclusion of an otherwise legitimate land use; and (5) whether or not the state of Tennessee, by a pervasive statutory scheme, has preempted local regulation of landfill construction. For the reasons hereafter stated, we reverse the action of the trial court and remand this case for further proceedings consistent with this opinion.

This controversy was precipitated as a result of BFI's interest in locating a sanitary landfill in East Knox County. The Zoning Resolution for Knox County, as amended through July 15, 1986, was the zoning resolution in force and effect at the time of BFI's application to locate the landfill. The zoning resolution allowed the construction and operation of a sanitary landfill in virtually all of the zoning districts of the county as a "use permitted on review." In other words, this specific use was not granted as a matter of right, but was permissible upon approval of an application for same by the MPC. It is also important to note that this procedure is in no way similar to requesting a variance to the zoning resolution.

In 1986, BFI acquired options to purchase approximately 325 acres of land located along Strawberry Plains Pike and Carter Mill Road to be used for the possible location of a solid-waste sanitary landfill.

As required by statute, BFI applied to the Tennessee Department of Health and Environment for a permit to construct and operate a sanitary landfill on the property. The application was filed on October 30, 1986. In conjunction with the application, BFI was required to conduct soil borings and certain other soil tests on the subject property. The resultant information was supplied to the state, which granted geological approval for a major portion of the site on February 4, 1987.

As a result of BFI's applying for a state permit in connection with the landfill project, this public information became known to some interested persons in Knox County. Apparently, as a result of this activity, some commissioners requested that the MPC staff develop guidelines to more stringently govern the location, construction and operation of landfills in Knox County. The MPC staff sought to comply with this request and pursuant thereto submitted for adoption certain proposed amendments to the zoning resolution at the MPC meeting of February 12, 1987. At that meeting a commissioner proposed a moratorium on applications for "use permitted on review" approvals of landfills. Both the proposed landfill amendments and the moratorium on landfill applications were rejected by the Commission.

On February 23, 1987, BFI filed an application with the MPC for a permit to operate a sanitary landfill upon the optioned property, zoned "Agricultural," as a "use permitted on review." BFI's application was approved by the MPC on March 12, 1987. Shortly thereafter, two environmental groups—"Citizens Against Pollution, Inc." ("CAP") and "Paschal–Carter Memorial Park Association" ("Paschal–Carter") —who had developed an interest in this project, sought to "appeal" MPC's decision by petitioning the Board to review MPC's action.

The "appeal" by these two groups was scheduled to be considered by the Board at its April 20, 1987 meeting. Also on the agenda for consideration by the Board was a set of proposed zoning resolution amendments pertaining to the location, construc-

tion and operation of sanitary landfills in the county. Although the amendments considered by the Board in April were somewhat similar to the earlier amendments that were rejected by MPC in February, several substantial changes had been made. The proposed zoning amendments considered at the Board's April meeting were not submitted to the Board until the morning of the scheduled meeting and prior to that time had not been reviewed or recommended by MPC as required by state law.

Before taking up the "appeal" of MPC's approval of BFI's application, the Board considered the zoning amendments. These extensively-modified zoning amendments were passed by the Board, which thereupon proceeded to consider the "appeal." Without approving or reversing the action of the MPC, the Board voted to remand BFI's application to the MPC "for study under the newly adopted sanitary landfill regulations" and to decide whether or not BFI's application met the "new" zoning requirements.

On June 11, 1987, the MPC met and followed the directive of the Board by passing a resolution stating that BFI's application did not meet the "newly adopted zoning regulations for landfill operations." MPC did not take a vote at that meeting to reconsider or reverse its prior act of approving BFI's application. The record also reflects that BFI did not amend, alter, or in any way change the application that had been filed and ultimately approved in March, 1987.

Once again the Board met on July 20, 1987 to consider the "appeal." Bolstered by the finding of the MPC that BFI's application did not meet the newly-adopted zoning regulations, the Board reversed the MPC's approval of BFI's application to operate a sanitary landfill.

I. STATUTORY REQUIREMENTS FOR AMENDING THE ZONING ORDINANCE

BFI contends that the amendments to the zoning resolution relative to landfills adopted by the Board at its April 28, 1987 meeting are invalid in that they were not adopted pursuant to the provisions of ei-

ther the Knox County Zoning Resolutions or state law. The record reflects that the intergovernmental committee of the Board of Commissioners requested that the MPC staff discuss with the Board the matter of zoning as it related to sanitary landfills. In addition, the Executive Director of the MPC testified that she had been contacted about this specific matter by Commissioners Walker and McMillan in December, 1986. She stated that the two commissioners inquired as to how the zoning worked and what the zoning law required in terms of approving landfills.

During the period December, 1986 to March, 1987, the Knox County Zoning Resolution allowed sanitary landfills as a "use permitted on review" in virtually every zone in Knox County. Sub-section .03 of each section of Article 5, "Zone Regulations," dealt with uses permitted on review. As to the use here under consideration, in each and every case sub-section .03 provided that a use is permitted on review for a "[s]anitary landfill subject to meeting all requirements of a registered solid waste disposal site as defined in Chapter 1200–1–7 of the Rules of the Tennessee Department of Public Health."

The subject property in the case under consideration is located in an agricultural zone. The regulations for agricultural zones are found in § 5.22 of the Knox County Zoning Resolution. Sub-section 3 of § 5.22 includes the following language, which is not found in most of the other zone regulations:

USES PERMITTED ON REVIEW. In any agricultural zone the following uses may be permitted by the Metropolitan Planning Commission as a "Use on Review" in accordance with the provisions contained in Section 6.50.

At the instance of the intergovernmental committee of the Board, the MPC staff proceeded to promulgate proposed amendments to the Knox County Zoning Resolution. The principal amendment proposed was the addition of a new section, § 4.70, "Sanitary Landfills," to Article 4, "STANDARDS." Another proposed amendment deleted sanitary landfills as a use permitted on review from some eleven zones. Up to this point the MPC and its staff were proceeding with their amendments in accordance with the accepted procedure as prescribed by state statute and the zoning resolution.

The counties of this state have been given the power and authority to adopt zoning plans by virtue of T.C.A. § 13–7–101, et seq. The power of a county legislative body to amend its zoning resolution is set out in T.C.A. § 13–7–105, which reads in part as follows:

13–7–105. Amendments of zoning ordinance provisions—Procedure.—(a) The county legislative body may from time to time amend the number, shape, boundary, area or any regulation of or within any district or districts or any other provision of any zoning ordinance; but any such amendment shall not be made or become effective unless the same be first submitted for approval, disapproval or suggestions to the regional planning commission of the region in which the territory covered by the ordinance is located.... (b) [B]efore finally adopting any such amendment, the county legislative body shall hold a public hearing thereon, at least thirty (30) days' notice of the time and place of which shall be given by at least one (1) publication in a newspaper of general circulation in the county. Any such amendment shall be published at least once in the official newspaper of the county or in a newspaper of general circulation in the county.

Section 6.30, "AMENDMENTS," of the regulations provides that "[t]he regulations, restrictions, boundaries and options set forth in this Resolution may, upon proper application by the property owner or his designated representative, by an appropriate governmental agency, or the County Board of Commissioners, be amended ... from time to time...." Sub-section 2 thereof provides that amendments are to be initiated by filing an application with the MPC. Sub-section 3 provides that upon receiving an application, the MPC is to schedule a public hearing, noting that "[t]he Planning Commission shall consider

and make recommendations on all such proposed amendments...."

The above outlined amending procedure is in keeping with the general law on the subject. *See* 82 Am.Jur.2d, *Zoning and Planning* § 57 (1976); 1 R. Anderson, *American Law of Zoning 3rd* § 432 (1986).

The proposed amendments to the zoning resolution regarding the regulation of sanitary landfills came before the MPC at its meeting on February 12, 1987. At that time, the political ramifications of BFI's application became more apparent. The specter of a previously-authorized bond issue for the construction of an incinerator in Knox County to dispose of a substantial portion of the county's trash, litter, etc. began to appear. County Commissioner Billy Walker, who represented the eighth district at that time, appeared before the MPC and, according to the minutes thereof, stated that "he would be happy to recommend to the Commission that a study be funded but he felt that once completed, it would be found that Knox County has no site which meets regulations [for sanitary landfills]; bonds had been sold and the money was in the bank for an incinerator." A motion was made to reject the proposed amendments in their entirety. A motion to amend that motion—recommending that the Knox County Board of Commissioners consider a moratorium on landfills—failed. The original motion to reject the landfill amendments was unanimously adopted.

Shortly thereafter, BFI filed its application for a permit for a sanitary landfill on its optioned property as a use permitted on review in an agricultural zone. The MPC met on March 12, 1987, to review BFI's application in accordance with the procedures set forth in § 6.50 of the zoning resolution. At that meeting, Commissioner Joe McMillan, who also represented the eighth district, and who had been identified previously by the executive director of the MPC as being one of the commissioners who had requested MPC's staff to develop more stringent regulations for sanitary landfills, appeared before the commission in opposition to BFI's application. The minutes of MPC's meeting reflect the following comments by Commissioner McMillan:

Commissioner Joe McMillan, of the Knox County Board of Commissioners and representative of the 8th District, stated they had been fighting landfills for 20 years; apparently the proposed incinerator was the best kept secret in town; it was his hope that this community nor any other would ever have to suffer a landfill again as a landfill was known now; the incinerator was on schedule and bonds had been sold for it with no taxes to be paid by the City of [sic (or)] County; a nine member incinerator authority had been responsible for getting the incinerator package together; there was no garbage crisis in Knoxville or Knox County; the garbage crises was with BFI who just wanted more big bucks. He stated that a letter from the Chestnut Ridge landfill company stated that they have enough capacity to operate for 9 years handling the present volume of waste; the incinerator would be in operation by 1991; he felt the legislative bodies should stop listening to the Rockefellers and listen to the Little Fellers. He stated this landfill would be detrimental to their community; any burning of plastic causes a carcinogen[ic] reaction but burning in the incinerator would make steam and create electricity which could be sold to the Knoxville Utilities Board; Blount, Anderson and Sevier counties would join in this venture also; he had been to 5 incinerator sites and they were clean enough to have a picnic outside the door; some on the incinerator authority were fearful that a new landfill would kill the possibility of obtaining the incinerator. He asked how one could justify a death or maiming due to carcinogens in the air or water; there were 200 wells and springs in this area; he asked that the citizens be protected.

Following considerable discussion, the MPC approved BFI's application.

Following the "appellate" procedure set forth in § 6.40 of the Zoning Resolution, which we will consider in more detail later, the two previously noted citizens' groups sought to "appeal" the action of the MPC

to the Board. The Board scheduled a public hearing for April 20, 1987, at which time it proposed to consider both the "appeal" and the proposed amendments to the zoning resolution regarding sanitary landfills.

At the April 20, 1987 meeting, the Board elected to consider the proposed amendments to the zoning resolution prior to considering the Citizens' groups' "appeal." As previously noted, the amendments to be considered by the Board were not presented to them until the morning of the meeting. The basic framework of these amendments was the same as when they were considered and ultimately rejected by the MPC at its February meeting. The record reflects, however, that following the rejection of the amendments, both the MPC staff and the Law Department of Knox County made no less than ten changes in the amendments, three of which were described by the Knox County Law Director as "major substantial changes." In making this assessment, the Law Director was referring to the following paragraphs, which were added to the earlier draft.

C. "Site" as used herein shall mean the area approved for use as a sanitary landfill and may be all or a portion of a lot or parcel of property and the area approved may not be identical to the property boundary line or tax parcel boundary.

D. Measurements from the site to meet the required distances set forth shall be from the nearest point in a property line of a parcel containing a use, structure, or natural condition from which a minimum distance is required to the nearest point in the boundary of the site unless these regulations provide measurements to another point.

The Board then adopted these zoning resolution amendments at its April 20th

meeting. None of the alterations to the amendments was considered by the MPC prior to adoption by the Board.

Following the adoption of the zoning amendments, the Board considered the citizens' groups' "appeal." Without affirming or rejecting the appeal, the Board remanded BFI's application back to the MPC with instructions that the MPC evaluate BFI's application in accordance with the provisions of the zoning resolution as then amended.[2] At its June 11, 1987 meeting, the MPC once again considered BFI's original application for a sanitary landfill permit. No change or alteration in its original application had been made by BFI. The minutes of MPC reflect that the MPC staff recommended that BFI's application be denied "because the information and materials submitted by the petitioner do not meet the requirements of [the newly adopted] § 4.70 of the Knox County Zoning Resolution."

The minutes also reflect that Commissioner Joe McMillan, whose involvement in this process has already been noted, and who previously had identified himself as the "father" of the solid waste incinerator for Knox County, appeared to encourage the denial of BFI's application. The minutes reflect that Commissioner McMillan stated:

[T]he plans for a solid waste incinerator were on schedule for August of 1991; he had helped author the new regulations adopted by the Board of Commissioners; he asked that the matter be judged on the new regulations adopted; the water in the area could be affected; there were many springs and wells in the area. He asked that the judgment be that BFI does not meet those newly adopted regulations and that this matter be denied.

2. It is interesting to note that notwithstanding the fact that these amendments were contemplated as being effective on that date, the Law Director for Knox County advised the Board that it had an option as to whether it applied them or not. This was his comment to the Board at its April 20th meeting:

[I]f you adopt these today, any request for approval of use on review, you may send back to the Commission to apply these new stan-

dards. If you want these new standards to apply to any pending matter, you would have to resubmitt [sic] that pending matter to MPC to be considered underneath these standards. Once you adopt the standards, you have a pending request. You may go ahead and consider that request under the current standards or send that back to MPC to have it judged under these new standards.

After some further discussion, the MPC adopted the following motion:

THAT IN RESPONSE TO THE REQUEST OF THE COUNTY COMMISSION THAT MPC GO ON RECORD AS MAKING THE JUDGMENT THAT THE PROPOSED BROWNING–FERRIS LANDFILL IN THE CARTER AREA OFF STRAWBERRY PLAINS PIKE DOES NOT MEET THE REQUIREMENTS AS TO LOCATION PASSED BY COUNTY COMMISSION AT ITS APRIL 1987 MEETING.

In dismissing BFI's application for writ of certiorari, the learned chancellor, for whom this Court has great respect, seemingly overlooked BFI's claim of the invalidity of the amendments to the zoning resolution enacted by the Board at its April 20th meeting. Instead, the court dealt only with the Board's alleged noncompliance with the notice provisions of the law. As to this point the court stated:

The Board of Commissioners held the "appeal" in abeyance pending compliance with the statutory requirements respecting the amendments. While BFI argues that proper notice, etc., was not given of the proposed amendments, the Court believes that a rather substantial compliance appears from the evidence. We see no deprivation of due process rights, and no failure to respect the statutory mandates.

It is clear to this Court that the chancellor purely and simply overlooked what we feel is a glaring defect in the amendment process. This defect rendered the adoption of the zoning amendments null and void.

T.C.A. § 13–7–105 provides with respect to zoning changes by a county legislative body that "any such amendment shall not be made or become effective *unless the same be first submitted for approval, disapproval or suggestions to the regional planning commission* of the region in which the territory covered by the ordinance is located...." [emphasis added] This requirement is incorporated in § 6.30 of the Knox County Zoning Resolution.

Although elemental, it bears restating that the right of a county to enact or amend zoning regulations is based upon powers delegated to it by the state legislature by specific enabling acts. *Henry v. White*, 194 Tenn. 192, 250 S.W.2d 70 (1951); *State ex rel. Lightman v. City of Nashville*, 166 Tenn. 191, 60 S.W.2d 161 (1933). Furthermore, inasmuch as zoning laws are in derogation of the common law and operate to deprive a property owner of a use of his land that would otherwise be lawful, they are to be strictly construed by the courts in favor of the property owner. *State ex rel. Wright v. City of Oak Hill*, 204 Tenn. 353, 321 S.W.2d 557 (1959); *Red Acres Improvement Club, Inc. v. Burkhalter*, 193 Tenn. 79, 241 S.W.2d 921 (1951). *See also State ex rel. SCA Chemical Services v. Sanidas*, 681 S.W.2d 557, 562 (Tenn.App.1984).

The Middle Section of this Court in the case of *Wilgus v. City of Murfreesboro*, 532 S.W.2d 50 (Tenn.App.1975) had occasion to so apply T.C.A. § 13–7–204 (then T.C.A. § 13–704) to a fact situation similar to the case at bar. In *Wilgus*, a proposed amendment to the zoning ordinance of the City of Murfreesboro was being considered by the Murfreesboro City Council, which amendment had to be passed by the Council on three successive readings. Prior to its enactment on the third and final reading, the area to be rezoned was reduced in size and certain conditions on the use of the property were created by a letter from the city attorney.

Certain property owners brought suit in the Chancery Court for Rutherford County challenging the adoption of the zoning amendment, questioning the validity of the notice of the public hearing, and challenging the modification of the text of the ordinance between the second and third readings. The Middle Section of this Court reversed the chancellor's ruling to the effect that the enactment of the ordinance was invalid because of improper notice. The Court also dealt with the second issue, that the City Council's revision of the proposed zoning amendment required its resubmission to the Planning Commission. While holding that the modification was minor and that it did not create a substan-

tial change requiring resubmission to the Planning Commission, the Court concluded that the provisions regarding resubmission of what is now T.C.A. § 13–7–204 are mandatory. The court stated:

If a proposed zoning ordinance is amended so substantially that a new proposal is, in effect, created we think it clear that both the state statute and municipal code provision require it to be submitted to the planning commission for its consideration before the municipal legislative body may finally act upon it. To hold otherwise would defeat the clear intent of the statutory requirement that the legislative body have available, before it acts, the recommendations of the commission. We do not suggest, however, that the test for determining whether a proposed zoning ordinance, as amended, must be resubmitted to a planning commission is the same as the test for determining whether a proposed ordinance, as amended, must be passed on three different days because it became a new bill. The purposes of the two requirements are not identical.

The purpose of requiring submission to the planning commission is to give the legislative body the advantage of the commission's expertise on land use planning with respect to the proposal that it must either adopt or reject. A revision in a proposed zoning ordinance that would not, under *Mitchell*, create a new bill mandating passage for the requisite number of days under an applicable charter or statute, might nevertheless be so important as to require resubmission of the proposal to the commission. The test is whether the revision is so substantial as to create a strong probability that the commission's recommendation would have been affected by the revision. If the change is both inconsequential and produces no detrimental effects to those who would oppose it, then the revised proposal is not required to be resubmitted.

The lawmaking powers of the municipality being vested in its governing body, there is no requirement that it bide by the commission's suggestions. It is re-quired, however, that it have before it those suggestions when it acts. The statutory requirement is meaningless unless the fundamental considerations created by the terms of the ordinance militating for and against its adoption were actually before the commission. Consideration by the courts of the substantiality of the revision is properly limited to an examination of the face of the ordinance.

*Wilgus,* 532 S.W.2d at 53–54.

In applying the *Wilgus* test to the case at bar, we have examined the amendments as adopted, paying particular attention to the revisions that were not submitted to or considered by the MPC. This Court is of the opinion that the eleventh-hour revisions were important and substantial enough to require the resubmission of the proposed amendments to the MPC. Inasmuch as this was not done, we hold that the amendments to the Knox County Zoning Resolution adopted by the Board at its meeting on April 20, 1987 are null and void and of no effect. As a result, the ensuing review and rejection of BFI's application by MPC in June, 1987 is thereby rendered void and constitutes a nullity as well.

## II. THE "APPELLATE AUTHORITY" OF THE BOARD

■ Having determined that the amendments regarding sanitary landfills to the zoning ordinance are invalid, we next consider whether or not the Board has lawful appellate jurisdiction over the granting of a permit for a use permitted on review by the MPC. BFI contends that it does not. After reviewing this record and the applicable law, we agree with BFI.

Following the authorization of a permit for a landfill pursuant to BFI's application, subject to appropriate Tennessee rules and regulations, the two citizens' groups, as already noted, "appealed" to the Board. This appellate process, the Board argues, is purportedly contained in the Knox County Zoning Resolution § 6.40 under the heading "Commissioners' Review." We must, however, look at the placement of this section in its proper context. The preceding section, § 6.30, deals with the process for

amending the zoning resolution. The following section, § 6.50, sets forth the procedure for authorizing uses permitted on review by the MPC.

The lead paragraph of § 6.40 reads as follows:

The Metropolitan Planning Commission shall make a report to the Board of Commissioners upon all such applications approved by it, but before the enactment of any amendment to the Zoning Resolution the Board shall hold a public hearing thereon, at least thirty (30) days notice of the time and place of which shall be published once in a daily newspaper of general circulation in Knox County.

The following section, § 6.40.01, together with four sub-sections, sets forth the method for seeking relief from action of the MPC by the Board. Section 6.40.01 reads as follows:

Any person, firm, or corporation aggrieved by any decision of the Metropolitan Planning Commission may petition the Board of Commissioners to consider the same. Such petition shall be in writing and shall state with particularity:

A. The name of the owner of the subject property.

B. A description of the subject property, including the county property map number and parcel or lot number.

C. A statement of the petitioner's interest in the matter, including a description of affected property owned by petitioner where petitioner is not the owner of the subject property.

D. A statement of the use or zone desired or opposed, including a summary of the zoning of all property located within three hundred (300) feet of the subject property.

While a reading of the entire section clearly appears to be dealing primarily with the contesting of the action of MPC in enacting or failing to enact an amendment to the zoning resolution, sub-section "D" of § 6.40.01 and sub-section A(2) of § 6.40.03 could lead one to believe that this procedure would be followed insofar as challenging a zoning use. However, it is not the methodology that is in question; rather, it is the right of an appeal concerning a permit granted under these conditions. In the following section, § 6.50, entitled "Procedure for Authorizing Uses Permitted on Review," there is *no reference whatsoever* to any "appellate" procedure involving the Board of Commissioners. As a matter of fact, the Board is not mentioned at all.

In disposing of this issue, the trial judge said:

The issue of the authority of the County Commission to function in this manner is somewhat unsettling, since the statutory scheme, T.C.A. 13-7-307, et seq., as contrasted to Section 6.40 of the Zoning Resolution, makes no provision for the retention by the County Commission of supervisory powers over the Planning Commission. Is Section 6.40 of the Zoning Resolution valid? We believe so. No case has been cited which holds that a County Commission cannot function in a dual capacity. The dual-capacity role involves no constitutional infirmity, and is not specifically prohibited by statute. One may speculate concerning the minor role assigned to the Board of Adjustment by the County Commission, but insofar as this Court is able to determine no legal infirmity results.

This issue does not challenge whether or not a county legislative body can function in a "dual capacity." What it does contest is whether or not, under the enabling legislation authorizing counties to regulate zoning, a county legislative body, without legislative authority, can set itself up as an appellate review board of an administrative decision. We think not.

We note that in the Tennessee Code, our General Assembly dealt separately and differently with counties and cities insofar as enabling legislation pertaining to zoning is concerned. Part 1 of Chapter 7 pertains to county zoning and is codified as §§ 13-7-101 through -115. Part 2 encompasses "municipal zoning" and is codified as §§ 13-7-201 through -210.

There is indeed justification for separate enabling acts pertaining to zoning for counties and municipalities since the two differ vastly governmentally and politically, with

cities or municipal corporations having substantially broader rights and powers. In 56 Am.Jur.2d *Municipal Corporations Counties, and Other Political Subdivisions* § 18, at 83 (1971), the rationale for the different treatment is further explained:

There is thus a logical basis for drawing a distinction between counties and ordinary municipal corporations. Counties are created by the state in the exercise of its own sovereign power, without the particular solicitation, consent, or concurrence of the people who inhabit them. They owe their creation to statutes which confer upon them all the powers they possess, prescribe their duties, and impose the liabilities to which they are subject. Basically, and to a large extent, the powers and functions of a county have a direct correlation with the effectuation of the general policy of the state and are, in fact, only an instrumentality for the general administration of that policy. Municipal corporations, on the other hand, are more amply endowed with corporate life and functions. They exist under general or special charters conferred at the direct solicitation or by the free consent of the people who compose them and are created chiefly for the interest, advantage, and convenience of their inhabitants.

The courts of this state have historically recognized this difference. In *Burnett v. Maloney*, 97 Tenn. 697, 712–13, 715–16, 37 S.W. 689, 693 (1896), our Supreme Court stated:

That there is a wide difference between the powers of municipal and county corporations, under similar Acts of the Legislature, is well supported by reason and authority.... Dillon, Judge, author of the noted work on Municipal Corporations, said: "Counties owe their creation to the statutes, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe, and impress all the liabilities to which they are subject. Considered with respect to their powers, duties, and liabilities, they stand low down in the scale of corporate existence. For this reason

they are ranked among what are styled quasi corporations. This designation is employed to distinguish them from private corporations aggregate and from municipal corporations proper, such as cities acting under general or special charters more amply endowed with corporate life and functions, conferred in general at the request of the inhabitants of the municipality, for their peculiar and special advantage and convenience. The decisions of the Courts of every State in the Union, recognizing this distinction, hold incorporated towns and cities to a much more extended liability, and give them more extended power and discretion, than they do counties."

. . . . .

It has been tersely said "the limits of all powers of counties, except those necessarily implied, must be found within the four corners of the statutory provision made by the Legislature." 4 Am. & Eng.Enc.L., 389.

In the later case of *Porter v. City of Paris*, 184 Tenn. 555, 557, 201 S.W.2d 688, 689 (1947), the Supreme Court again recognized this difference, here emphasizing the broad powers conferred upon municipalities. The Court stated:

The courts of this State have given sanction to broad powers of regulation and a wide discretion in the exercise of the police power as vested in municipalities.

. . . .

In *Chattanooga v. Norman*, 92 Tenn. 73, 78, 20 S.W. 417, 419 [(1892)] the Court, citing with approval from Cooley on Constitutional Limitations, Chapter 16, and cases cited, said: "The police power of a state, or a municipality as an arm of the state, extends to the making of such laws and ordinances as are necessary to secure the safety, health, good order, peace, comfort, protection, and convenience of the state or municipality. It not only permits passage of general laws for the entire state or municipality, but special ones, applicable to particular localities, highways, rivers, streets and limits of a territory or a city; and of

these, and the necessity for local application, the lawmaking power is the judge and, if not in violation of a fundamental law, or unreasonable, they are everywhere upheld."

In 20 C.J.S. *Counties* § 71, at 273 (1990), we find the following:

In the absence of home rule, a county board possesses and can exercise only such powers, as are expressly conferred on it by the constitution or statutes of the state, or such powers as arise by necessary implication from those expressly granted or such as are requisite to the performance of the duties which are imposed on it by law. (footnotes omitted).

Our research unearthed only one case dealing with an appeal from the action of a local planning commission to the governing body of the governmental entity relative to a use permitted on review. That case is *Joseph Co. v. Bailey*, coincidentally arising in Knox County, reported in 14 T.A.M. 5–19, 1988 WL 136630. An important distinction should be pointed out immediately, however. While the planning commission involved in the *Joseph Co.* case was the same planning commission—the MPC—the governmental body to which an appeal was taken from the action of the planning commission denying the landowner's petition for use on review was the Knoxville City Council. Additionally, no challenge was made as to the authority of the Knoxville City Council to exercise the right of appellate review of the planning commission's actions.

However, the *Joseph Co.* case does reveal some distinct differences between the Knoxville City Code governing zoning and the Knox County Zoning Resolution as they pertain to uses permitted on review. We quote from *Joseph Co.:*

The standards to be followed by the MPC when determining whether to approve a use on review are set forth in Article V, § 3 of the Knoxville City Code. This section provides, in part, as follows:

A. General standards. The planning commission, in the exercise of its administrative judgement, shall be guided by adopted plans and policies, including the "General Plan" and the "One–Year Plan," and by the following general standards:

1. The use is consistent with adopted plans and policies, including the "General Plan" and the "One–Year Plan."
2. The use is in harmony with the general purpose and intent of these zoning regulations.
3. The use is compatible with the character of the neighborhood where it is proposed, and with the size and location of buildings in the vicinity.
4. The use will not significantly injure the value of adjacent property or by noise, lights, fumes, odors, vibration, traffic, congestion or other impacts detract from the immediate environment.
5. The use is not of a nature or so located as to draw substantial additional traffic through residential streets.
6. The nature of development in the surrounding area is not such as to pose a potential hazard to the proposed use or to create an undesirable environment for the proposed use.

Subsection 5 of Article V, § 3 provides:

Automobile wrecking and junk yards: Because of the nature and character of their operations, automobile wrecking, junk, or salvage yards, and similar uses of land can have a decidedly detrimental effect upon surrounding properties. These uses tend to create problems of noise, dust, traffic and health hazards, and may adversely affect property values by their general appearance.

Finally, Article VII, § 5 of the City Code sets forth the procedure for approving or denying a use on review:

Approval or denial. The planning commission may approve a development plan or use permitted on review where it can be shown that the proposed plan or use is in harmony with the general purpose and intent of the zoning ordinance and with the general plan and one-year plan and is reasonably necessary for the convenience and welfare of the community.

The planning commission may deny a development plan or use permitted on review where the above cannot be shown or where it can be shown that approval would have an adverse impact on the character of the neighborhood in which the site is located.

Whereas a use may be appropriated [sic] in one location and inappropriate in another location in the same zoning district, the planning commission shall be guided by the policies of the general plan and by the one-year plan in the exercise of its administrative judgement about the location and appropriateness of uses permitted on review. The rationale for planning commission approval, conditions or denial including substantive, factual statements of necessity and appropriateness or of adverse impact shall be included in the minutes of the planning commission meeting where decisions are made.

There is no counterpart in the Knox County Zoning Resolution to the section above quoted from the Knoxville City Code entitled "General Standards." Furthermore, the language, requirements and procedure for approving a use permitted on review in the city code is substantially different from § 6.50, "Procedure for Authorizing Use as Permitted on Review," in the Knox County Zoning Resolution.

Under the Knox County Zoning Resolution, it is the responsibility and duty of the Department of Code Administration and Inspections to issue a building permit to an applicant if the applicant meets all the requirements of the zoning regulations, and there is no valid ground for denying the application. When an application for a use permitted on review is filed with the Knox County Zoning Department, the MPC takes the place of the Department of Code Administration and Inspections in carrying out the administrative step of issuing the permit.

The Executive Director of the MPC testified without contradiction that the use on review process under the Knox County Zoning Resolution is an administrative matter, and that the process is of such a nature that it does not require legislative action and is final unless appealed.

It having been earlier established that a county such as Knox acquires its power to enact zoning regulations from the state, we now examine the enabling legislation authorizing county zoning, codified as T.C.A. §§ 13–7–101, et seq. Section 13–7–101, entitled, "Grant of Zoning Power," provides in part as follows:

(a)(1) The county legislative body of any county is empowered, in accordance with the conditions and the procedure specified in this part, to regulate, in the portions of such county which lie outside of municipal corporations, the location, height and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts, and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation or other purposes.

T.C.A. § 13–7–101(a)(1) (Supp.1990).

Section 13–7–106 mandates that the legislative body of any county that enacts zoning regulations under the authority of this part of the Code shall create a county board of zoning appeals consisting of at least three or five members. Section 13–7–107 authorizes the county legislative body to set up rules of procedure governing the operation of the Board of Zoning Appeals that are not inconsistent with the provisions of the state enabling act.

Section 13–7–108, entitled "Persons taking appeals," reads as follows:

Appeals to the board of appeals may be taken by any person aggrieved, or by any officer, department or board of the county affected, by any grant or withholding of a building permit or by any other decision of a building commissioner or other administrative official based in whole or in part upon the provisions of any ordinance under this part.

Section 13–7–109, entitled "Powers of board of appeals" reads as follows in pertinent part:

The board of appeals shall have the following powers:

(1) To hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by the county building commissioner or any other administrative official in the carrying out or enforcement of any ordinance enacted pursuant to this part;

Nowhere does the enabling legislation regarding zoning reflect that a county legislative body may retain unto itself the right of appellate review of an administrative act of the regional planning commission of the region over which the legislative body has jurisdiction, as the Board seeks to do in this case pursuant to § 6.40 of the Knox County Zoning Resolution. Granted, under 6.40, et seq., the Board does have authority to review amendments to the zoning resolution presented to the MPC. MPC action in this regard is advisory only, and the enabling legislation mandates that the power to amend or alter a zoning resolution vests in the county legislative authority—the Board of Commissioners.

A case very much in point is that of *Harrell v. Hamblen County Quarterly Court*, 526 S.W.2d 505 (Tenn.App.1975). In *Harrell*, the Hamblen Quarterly Court and Hamblen County Planning Commission appealed from a chancery court decree holding that they had acted arbitrarily in denying Harrell and others a permit to construct a mobile home park. Plaintiffs submitted a preliminary plan to the planning commission to develop certain property into a mobile home park. Pursuant to private acts, Hamblen County had established regulations and standards for the creation of mobile home parks outside the city limits of Morristown. According to those regulations, fifteen provisions had to be met in order to qualify for a mobile home park permit.

When the final plans were submitted to the planning commission and a permit requested, the commission denied the application. Following this action by the planning commission, Harrell appealed to the Quarterly County Court, which was sitting as a zoning board of appeals. In this capacity, the quarterly court voted to uphold the ruling of the planning commission. The chancellor found that the planning commission and the quarterly court had acted arbitrarily in denying the permit and directed the planning commission to issue a permit.

On appeal, Hamblen County contended that under the ordinance, the planning commission had the discretion to deny any permit that in its judgment affected the general welfare of the community. The Court disagreed.

In affirming the decree of the chancellor the court relied upon several well-known treatises on zoning, as well as cases from other jurisdictions. The court stated:

"The grant or refusal of a permit is to a certain extent within the sound discretion of the board or official authorized to use it, but the discretion must be exercised reasonably, and if an applicant meets all of the requirements of the zoning regulations and there is no valid ground for denial of the application, the permit should be issued." 101 C.J.S. Zoning, § 224.

*The Law of Zoning and Planning*, Chapter 55, Section 3, says:

"So long as the application is in order and the proposed use of the property complies with applicable municipal ordinances or, where although not complying, the premises has a vested non-conforming status, the applicant is entitled to a permit, and it is the duty of the administrative officer to issue him one."

. . . .

" 'Ordinarily the issuance of a building permit is purely an administrative act, and the person charged with its issuance must follow the literal provisions of the zoning ordinance. He is circumscribed by their provisions and absent some cogent reason based on the wording in the ordinance, the granting of a permit is required as a matter of course. The granting or withholding of a permit is

not a matter of arbitrary discretion. If the applicant complies with the requirements of the ordinance, he is entitled to his permit. *Beckmann v. Talbot,* 278 N.Y. 146, 15 N.E.2d 556; *Carpenter v. Grab,* 257 App.Div. 860, 12 N.Y.S.2d 906; *People ex rel. Corn Hill Realty Co. v. Stroebel,* 209 N.Y. 434, 103 N.E. 735; *McQuillin, Municipal Corporation,* 3d Ed., Sec. 26.206 and cases cited. This being so, the respondents must be guided by provisions of the ordinance set forth above.' "

*Id.* at 509.

We are of the opinion that the Board of Commissioners has no appellate review authority under the Knox County Zoning Resolution over the actions of the MPC or any of its administrative staff in the issuance or denial of a building permit in accordance with the provisions of the Zoning Resolution. This is not to say that an aggrieved party is without legal redress. In our opinion, the enabling legislation and the provisions of § 6.60, entitled "Board of Adjustment and Enforcement," provide an appropriate method for appeal to the Board of Adjustment.

In conclusion, for the reasons stated above, we hold that the attempted amendments to the Knox County Zoning Resolution pertaining to sanitary landfills are invalid, void and of no effect. Furthermore, we hold that the Knox County Board of Commissioners has no appellate jurisdiction over administrative acts of either the MPC or administrative officers in regard to the issuance or denial of building permits, including permits for uses permitted on review by the MPC. To the extent that the Knox County Zoning Resolution purports to provide machinery for the initiating and processing of such appeals, we hold same to be invalid as well.

It follows that the approval granted by the MPC at its meeting of March 12, 1987 of BFI's application for a permit to construct and operate a sanitary landfill upon the condition that it meet all state of Tennessee rules and regulations in obtaining a permit has become and is now final, in accordance with the provisions of § 6.50.05 of the Knox County Zoning Resolution. As a result, BFI is entitled to have the permit issued subject to the conditions imposed by the MPC.

The judgment of the court below is reversed. This cause is remanded to the Circuit Court of Knox County. A permanent injunction is to issue prohibiting the Board of Commissioners from interfering with BFI's application for said permit. In addition, BFI shall be entitled to such other and further relief, injunctive or otherwise, to bring about the issuance of said permit.

Inasmuch as our disposition of these two issues is dispositive of this litigation, all other issues raised by BFI are pretermitted. Costs in this cause on appeal are taxed to the Knox County Board of Commissioners, for which execution may issue if necessary.

HIGHERS and GODDARD, JJ., concur.