Alfred D. FISICHELLI, etc.,
and Salvatore Ambra, etc.,
Plaintiffs, Appellants,

v.

The CITY KNOWN AS The TOWN OF
METHUEN, et al., Defendants,
Appellees.

No. 91–1609.

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1991.

Decided Feb. 6, 1992.

Carol Hajjar McGravey with whom Wilbur A. Hyatt and Hyatt & Hyatt Law Offices, Lawrence, Mass., were on brief for plaintiffs, appellants.

Samuel Perkins with whom Kimberly M. Saillant and Morrison, Mahoney & Miller, Boston, Mass., were on brief for defendants, appellees.

Before BREYER, Chief Judge, SELYA, Circuit Judge, and CYR, Circuit Judge.

BREYER, Chief Judge.

This case concerns the application of the "state action immunity" doctrine to an antitrust suit against a municipality. *City of Columbia v. Omni Outdoor Advertising, Inc.,* —— U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991); *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Plaintiffs charge that the Town of Methuen

denied their industrial revenue bond application for improper, anticompetitive reasons, namely to help an established company at the expense of a competitor. The district court found the defendants "immune" from antitrust liability, and it granted summary judgment in their favor. 764 F.Supp. 2. The plaintiffs appeal. After reviewing the complaint, the record, and the law, we agree with the district court and affirm its judgment for the defendants.

## I

### The Basic Facts

We assume the basic facts as plaintiffs allege them in their complaint. The plaintiffs are two real estate trustees. They wished to build a shopping mall in Methuen, Massachusetts. State law gives many towns the legal power to help finance this kind of development by creating an "Industrial Finance Authority," which, with town approval, may issue special tax-free state development bonds. Mass. Gen.L. ch. 40D, § 2 (1990). Methuen has created such an Authority, operated by its town manager. And, Methuen's town manager and city councilors considered issuing development bonds to help finance the plaintiffs' mall. At the last moment, however, the town council voted against issuing the bonds. It allegedly did so because the majority of the council realized (a) that one member of the council, Melvin Weagle, Jr., owned a drug store; (b) that a different drug store (a CVS pharmacy) would lease space in the plaintiffs' mall; and (c) that competition from CVS would hurt Weagle. Indeed, according to plaintiffs, the majority of town councilors may have discussed the matter with Weagle and may have reached an agreement with him to cast a negative vote, just to hurt his potential competitor. In any event, given their vote, the Methuen Industrial Finance Authority could not issue the bonds. Mass.Gen.L. ch. 40D, § 12 (1990). And, plaintiffs were left to obtain much higher cost financing elsewhere.

In this lawsuit, the plaintiffs charge that the Town of Methuen, the Methuen Industrial Finance Authority, the town manager, and five town councilors have violated the

Sherman Act by acting in this way. 15 U.S.C. § 1 (forbidding agreements in restraint of trade), § 2 (forbidding actual, and attempted, "monopolization"). The legal question before us is whether, given these alleged facts, the municipality, its Authority, and its officials are "immune" from these federal antitrust charges.

## II

### *The Basic Law*

■ The courts have long held that the federal antitrust laws apply primarily to private activity, and they do "not apply to anticompetitive restraints imposed by the States 'as an act of government.'" *Columbia*, 111 S.Ct. at 1349 (quoting *Parker*, 317 U.S. at 352, 63 S.Ct. at 314). To delineate the precise outer bound of the antitrust laws in this area has not proved easy, particularly where the governmental actors are municipalities, which, though not states themselves, draw their legal life from state law. *See, e.g., Hallie v. Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985); *Community Communications Co. v. Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982); *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (plurality); *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Nonetheless, in the recent case of *City of Columbia v. Omni Outdoor Advertising, Inc.*, — U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), the Supreme Court helped to define the boundary of what it referred to as "*Parker* immunity," by setting forth four important propositions of law.

First, "*Parker* immunity" applies (*i.e.*, the antitrust laws do not apply) to actions taken by a municipality *if* the "municipality's restriction of competition ... [is] an authorized implementation of state policy." *Id.*, 111 S.Ct. at 1349.

Second, state law "authorize[s]" a municipal action (for antitrust immunity purposes) so long as it provides the municipality with a general grant of authority to take actions of *the sort* in question. The "concept of authority [is] *broader* than what is applied to determine the legality of the

municipality's action under state law." *Id.* at 1350 (emphasis added). Thus, so long as municipal decisions represent, *on their face*, a proper exercise of municipal authority, an antitrust court normally should not examine whether the *manner* of its exercise was improper, *i.e.*, whether that exercise was, in fact, unlawful due to procedural errors or because of substantive defects (such as the influence of an improper motive). Otherwise, the antitrust court will

> inevitably become[ ] the standard reviewer not only of federal agency activity but also of state and local activity whenever it is alleged that the governmental body, though possessing the power to engage in the challenged conduct, has actually exercised its power in a manner not authorized by state law.

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 212.3b, p. 156 (Supp.1991). *See Interface Group, Inc. v. Massachusetts Port Auth.*, 816 F.2d 9, 13–14 (1st Cir.1987).

Of course, this approach, while avoiding potentially burdensome interference by the federal judiciary in state activities, laws, and institutions, occasionally risks denying antitrust damages to victims of an anticompetitive conspiracy that violates state law in complex or subtle ways. Still, this approach does not, normally, leave such a victim completely empty handed, for state law itself often offers some kind of remedy.

Third, in deciding whether state law authorizes the "restriction of competition" in question, the antitrust court is to decide whether such "suppression of competition is the 'foreseeable result' of what the [state] statute authorizes." *Columbia*, 111 S.Ct. at 1350 (quoting *Hallie*, 471 U.S. at 42, 105 S.Ct. at 1718).

Fourth, in applying the "*Parker* immunity" doctrine, the courts should recognize no exception for "conspiracy," "bribery," or similar activity. "[W]ith the possible market participant exception [*i.e.*, where a city acts as a private firm], *any* action that qualifies as state action is '*ipso facto* ... exempt from the operation of the antitrust

laws.' " *Id.*, 111 S.Ct. at 1353 (emphasis in original) (quoting *Hoover v. Ronwin,* 466 U.S. 558, 568, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984)).

### III

### *Applying the Law*

The propositions of law that the Supreme Court enunciated in *Columbia* require a judgment for the defendants here. In *Columbia,* the Court found antitrust immunity where the municipality had promulgated billboard-zoning restrictions solely to help one private competitor and hurt another. In our view, if the wrongly-motivated anticompetitive billboard restrictions charged in *Columbia* amounted to "an authorized implementation of state policy," *id.,* 111 S.Ct. at 1349, so does the wrongly-motivated anticompetitive denial of development bonds charged here.

In both cases, the state "authorized" the municipal activity in question. In *Columbia* the Supreme Court said that the City's authority to enact billboard-zoning regulations of the sort at issue was "unquestioned." Here, the plaintiffs concede that state law gives a municipal authority broad power to issue, or deny, tax free development bonds; indeed, their complaint charges that defendants acted "under color of state law." Complaint at 17. In *Columbia,* the Court held that an improper, anticompetitive motive, whether or not sufficient under *state law* to invalidate the act, made no *antitrust* difference, for, as we noted above, the antitrust concept of state law "authority" is "broader than what is applied to determine the legality of the municipality's action under state law." *Columbia,* 111 S.Ct. at 1350. That being so, we do not see how the improper, anticompetitive motive could make a legal difference here.

Whether or not "suppression of competition" is a "foreseeable result of what the [state] statute authorizes" presents a closer question. The "foreseeability" in *Columbia* seemed fairly obvious. As the Court there pointed out, the "very purpose of zoning regulation is to displace unfettered business freedom in a manner that

regularly has the effect of preventing normal acts of competition...." *Id.* at 1350. Harm to competition seems a less obvious consequence of a decision to grant, or to deny, a development bond. Still, the state law purpose of such bonds is to "attract[ ] new industry," or to "substantially expand[ ]" existing industry, in order to reduce, or to avoid, present or future "unemployment." Mass.Gen.L. ch. 40D, § 2 (1990). *See also Opinion of Justices to House of Representatives,* 373 Mass. 873, 366 N.E.2d 1230 (1977). And that being so, an issuing Authority would seem likely to listen to arguments that a particular bond issue, rather than stimulating new business and new jobs for the community as a whole, would simply shift business and employment *within the community* from one competing firm to another. Insofar as an Authority accepted such an argument and, as a result, denied a bond application in a particular case, it would inevitably help the established firm and hurt the new firm trying to enter the market. For this reason, we agree with the Sixth Circuit's statement that

> decisions increasing or restricting competition, though not explicitly stated or recognized in the [state] statute, are a logical and necessary outcome of the authority to grant industrial revenue bonds for the purpose of protecting jobs.

*Riverview Invs., Inc. v. Ottawa Community Improvement Corp.,* 769 F.2d 324, 329 (6th Cir.), *modified,* 774 F.2d 162 (6th Cir. 1985). We conclude that "suppression of competition" of the sort here at issue is a "foreseeable result" of the bond-issuance decision.

█ Finally, appellants point out that the plaintiffs in *Columbia* sued the city itself, while in the present action appellants have sued not only the bond Authority, but also the town manager and town councilors "in their private capacities." The basic conduct of which the plaintiffs complain, however, concerns a decision taken by the individual defendants in their roles as town (or municipal Authority) officials. We do not believe that a plaintiff can avoid the ruling of *Columbia* simply by substituting, for

the name of the town, the names of the town officials who approved the challenged municipal action.

We conclude that the actions of which plaintiffs complain are actions taken by a municipal authority, and, for antitrust purposes, they amount to "an authorized implementation of state policy." *Columbia*, 111 S.Ct. at 1349. Consequently, they fall outside the reach of the federal antitrust laws. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

The judgment of the district court is

*Affirmed.*