**COMMAND FORCE SECURITY, INC.**

v.

**The CITY OF PORTSMOUTH, Gary Waters, Sheriff of the City of Portsmouth, Dennis Mook, Chief of Police of the City of Portsmouth.**

Civil Action No. 2:97CV102.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 29, 1997.

John Warren Hart, Beaton & Hart, Virginia Beach, VA, for plaintiff.

Joseph Robert Brame, III, William G. Broaddus, Scott Andrew Simmons, McGuire, Woods, Battle & Boothe, L.L.P., Richmond, VA, George Timothy Oksman, Office of City Attorney, Portsmouth, VA, for Defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is before the Court on the defendants' motion to dismiss. For reasons discussed below, that motion is **GRANTED** insofar as the complaint pertains to the City of Portsmouth. For reasons also discussed below, the defendants' motion is **DENIED** insofar as it applies to Chief Mook and Sheriff Waters, but that denial is **STAYED PENDING FURTHER ORDER OF THE COURT.** Plaintiff is **GRANTED LEAVE** to amend its complaint in accordance with this order. Unless plaintiff so amends its complaint within thirty (30) days of the date of this order, the Court will vacate the denial of defendants' motion insofar as it applies to Chief Mook and Sheriff Waters and instead will grant the motion.

### I. Background

The plaintiff is a Virginia corporation with its principal office in Virginia Beach, Virginia. The plaintiff contracts with clients to provide private security services. On September 19, 1996, the plaintiff and three other plaintiffs (all of which are also private security firms) filed a single complaint against a series of Virginia localities, including counties as well as municipal corporations, some of those localities' chiefs of police, and certain sheriffs whose bailiwicks include some of those localities. The complaint, discussed more fully below, claimed antitrust violations.

After a hearing on the matter, this Court determined that the four plaintiffs' filing of a single complaint against the numerous defendants constituted patent misjoinder. Thus, on January 23, 1997, this Court severed this misjoined action into thirty-two (32) separate causes of action, because the actions involving the plaintiffs and defendants varied both as to law and facts in the various localities. The instant case is one of those 32 severed cases. For temporary convenience, this Court directed the Clerk of the Court to file a photocopy of the four plaintiffs' initial complaint as each plaintiff's complaint in the 32 severed cases.

The crux of plaintiff's complaint in this particular lawsuit is that Portsmouth police officers and deputy sheriffs conspired with themselves and others to set prices, assign duties, and establish central markets in conducting unlicensed, off-duty security work in direct competition with plaintiff. According to plaintiff, the deputy sheriffs and officers have utilized municipal-owned uniforms, weapons, equipment, and vehicles during their private security moonlighting. These deputy sheriffs and officers are not licensed to perform private security work, plaintiff alleges, unlike plaintiff and plaintiff's employees who are so required under state law. Plaintiff further alleges that the defendants encourage on-duty personnel to solicit business for off-duty personnel as private security guards. Finally, plaintiff alleges that as a result of these "unfair trade practices," the plaintiff has lost numerous contracts and substantial sums of money. This, plaintiff says, violates federal and state antitrust laws, namely 15 U.S.C. §§ 1, 2 and Va.Code Ann. §§ 59.1–9.5, 59.1–9.6.

According to the complaint, defendant City of Portsmouth is a party to this action because of the actions of Chief Mook and other police officers. Chief Mook is a party because he established objectionable rules and policies pertaining to the off-duty employment of Portsmouth police officers. Sheriff Waters is a party because he established objectionable rules and policies pertaining to the off-duty employment of Portsmouth deputy sheriffs.

The defendants have moved to dismiss, arguing that they are absolutely immune from these antitrust claims pursuant to the Local Government Anti–Trust Act, the State Action Doctrine, and the state-law analogues to these federal bars.

### II. Analysis

#### A. The Local Government Antitrust Act

The Local Government Antitrust Act (LGAA), codified at 15 U.S.C. §§ 34–36, provides immunity to any local government, official, or employee acting in an official capacity from money damages, costs, or attorney fees in a suit under Section 4, 4A, or 4C of the Clayton Act. *R. Ernest Cohn v. Bond,* 953 F.2d 154, 157 (4th Cir.1991). But Congress was careful, however, to observe that the immunity provided to localities was im-

munity from suits seeking damages, not immunity from suits seeking injunctive relief. *Sandcrest Outpatient Serv. v. Cumberland County Hosp.*, 853 F.2d 1139, 1142 (4th Cir. 1988) (Powell, J. (Ret.), sitting by designation). In any event, "a court should strive to resolve the immunity issue as early as possible, with a minimum of expense and time to the parties." *Id.* at 1148 n. 9.

■ For purposes of the LGAA, a local government is "a city, county, parish, town ... or any other general function governmental unit established by State law." 15 U.S.C. § 34(1). Simply put, then, insofar as the complaint attacks the City of Portsmouth on federal antitrust grounds, the plaintiff simply cannot obtain money damages. The LGAA, however, does not bar plaintiff from obtaining an injunction against anti-competitive activity. Although the plaintiff has not specifically asked for injunctive relief in its complaint, the Court construes plaintiff's general request for "any other relief" to include a request for an injunction. Thus, focusing for the moment on the LGAA alone, the plaintiff is not barred by the LGAA from obtaining injunctive relief against the City of Portsmouth.

■ Turning to Chief Mook's potential immunity under the LGAA as a local government official potentially acting in an official capacity, the Fourth Circuit holds "that an affirmative grant of explicit authority is not required for an employee or government official to be acting in an official capacity under the LGAA...." *Sandcrest*, 853 F.2d at 1145. Instead, Justice Powell held, "[w]e believe that, on its face, the phrase 'acting in an official capacity' includes those lawful actions ... that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his position" *Id.* As Justice Powell further noted, Congress intended the "official capacity" proviso to shield local government officials from liability to the same extent as the local government itself. *Id.* at 1145 n. 7. Thus, to the extent that plaintiff is suing Chief Mook in his official capacity, the LGAA also bars plaintiff from obtaining money damages from him. For the same reasons pertaining to the City, however, the LGAA

does not prevent the plaintiff from obtaining injunctive relief against Chief Mook.

■ Sheriff Waters, however, presents a different question initially. In Virginia, sheriffs are state officials, Va.Code Ann. § 15.1–40.1 (1991), whose positions are constitutionally created, Va. Const. Art. VII, § 7. *McCoy v. Chesapeake Correctional Ctr.*, 788 F.Supp. 890, 893 (E.D.Va.1992). Thus, Sheriff Waters is not a local government official, and the LGAA appears not to be directly applicable to Sheriff Waters.

### B. The State Action Doctrine

■ Pursuant to the "State Action Doctrine," however, Sheriff Waters may be absolutely immune from both money damages and injunctive relief. Under the State Action Doctrine, courts hold that federal antitrust laws are not intended to prohibit States from imposing restraints on competition; thus, a State itself is absolutely immune from antitrust actions, both for money damages and for injunctive relief. *See Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *Cohn*, 953 F.2d at 158. A lawsuit brought directly against state officials, when they are acting in their official capacities, cannot circumvent the immunity given to the State itself as a sovereign. *See* Earl W. Kintner and Joseph P. Bauer, *Federal Antitrust Law*, § 76.6; *c.f. Cohn*, 953 F.2d at 158 (holding that physicians as agents of the hospital are "indistinguishable" from the hospital for immunity purposes under the LGAA). Thus, to the extent that plaintiff seeks to sue Sheriff Waters in his official capacity, he is absolutely immune from both money damages and injunctive relief under the State Action Doctrine.

■ Although its name might imply otherwise, the State Action Doctrine also may shield from injunctive relief both the City of Portsmouth and Chief Mock as a local official, thus filling the gap left open by the LGAA. To obtain immunity under the State Action Doctrine, localities, because they themselves are not sovereign, "must demonstrate that their anticompetitive activities were authorized by the State pursuant to state policy to displace competition with reg-

ulation or monopoly public service." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38–39, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985). State policy need not expressly set forth that it intends the delegated action to have anticompetitive effects; instead, the test is met when the anticompetitive effects are a "foreseeable result" of the grant of authority to regulate. *Id.* at 41–44, 105 S.Ct. at 1718–19. When local government officials act in their official capacities, they also are immune under the State Action Doctrine. *See Fisichelli v. City Known as Town of Methuen*, 956 F.2d 12, 15–16 (1st Cir.1992).

Therefore, this Court must discern whether the Commonwealth of Virginia has delegated authority to the City of Portsmouth, and that a foreseeable result of this delegation is the anticompetitive effect about which plaintiff complains in the instant case. A brief review of Virginia statutory law indicates that the Commonwealth indeed has delegated authority to the City of Portsmouth, and that a foreseeable result of this delegated authority is the anticompetitive effect on plaintiff's business. First, Va.Code Ann. § 15.1–133.1 allows localities to adopt ordinances permitting deputy sheriffs and police officers to engage in off-duty employment, which may occasionally require the use of their police powers in the performance of such employment. Second, Va.Code Ann. § 9–183.2 provides that a full-time law-enforcement officer employed by the Commonwealth or political subdivision thereof is exempt from the requirement that all private security company employees possess a valid registration from the pertinent state agency.

In confluence, it is clearly foreseeable that these two statutes will cause moonlighting deputy sheriffs and police officers to compete with private security companies. Thus, under the State Action Doctrine, the City of Portsmouth is immune from injunctive relief. In addition, to the extent that Chief Mook is acting in his official capacity, he also is immune from injunctive relief under the State Action.

In an attempt to avoid this conclusion, the plaintiff levels an interesting allegation: the City of Portsmouth has not adopted an ordinance permitting police officers or deputy sheriffs to engage in off-duty employment, which Va.Code Ann. § 15.1–133.1 apparently requires before the officers and deputy sheriffs may engage in such activity. If plaintiff's allegations are true, then Portsmouth police officers and deputy sheriffs are engaging in off-duty employment without the benefit of a Portsmouth ordinance permitting such activity. Because the Commonwealth of Virginia has authorized Portsmouth police officers and deputy sheriffs to moonlight only if Portsmouth enacts an ordinance permitting moonlighting, the plaintiff argues, the defendants are not protected under the State Action Doctrine. Thus, in apparently attempting to deny that the anticompetitive activities have been "authorized by the State" within the meaning of *Town of Hallie*, plaintiff implicitly contends that a locality's actions are immunized by the State Action Doctrine only when they substantively and procedurally comply with the state law authorizing that action.

Although this argument might have some superficial appeal, precedent forecloses the argument. In *Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 370–73, 111 S.Ct. 1344, 1349–50, 113 L.Ed.2d 382 (1991), the Court stated that demanding this stringent an authorization requirement would transform state administrative review into a federal antitrust lawsuit. Thus, the Court held, "in order to prevent Parker [the case establishing the State Action Doctrine] from undermining the very interests of federalism it is designed to protect, it is necessary to adopt a concept of authority broader than what is applied to determine the legality of the municipality's action under state law." *Id.* at 372, 111 S.Ct. at 1350. After *Omni*, the Tenth Circuit stated flatly, "[W]e reject the argument that alleged errors or abuses in the implementation of state law should expose the City to antitrust liability." *Allright Colorado, Inc. v. City and County of Denver*, 937 F.2d 1502, 1511 (10th Cir.1991). Likewise, the Ninth Circuit has held that plaintiffs cannot circumvent a municipality's immunity under the State Action Doctrine by arguing that the municipality imperfectly exercised its authority under state law. *Boone v. Redevelopment Agency of San Jose*, 841

F.2d 886, 891–92 (9th Cir.1988). Thus, the failure of the City of Portsmouth to enact formally an ordinance permitting officers and deputy sheriffs to obtain off-duty employment does not destroy absolute immunity under the State Action Doctrine.

### C. State Antitrust Immunity

■ Plaintiff also claims violations of the Virginia Antitrust Act (VAA). The State Action Doctrine, however, bars plaintiffs from asserting state antitrust violations to the same extent that it bars plaintiffs from asserting federal antitrust violations. *Reasor v. City of Norfolk,* 606 F.Supp. 788, 796 (E.D.Va.1984). Further, Va.Code Ann. § 59.1–9.4(b)(1) exempts from scrutiny under the VAA any "conduct that is authorized, regulated, or approved . . . by a statute of this Commonwealth." Judge Clarke wrote in *Reasor,*

> The *Parker* immunity [the "State Action Doctrine"] which foreclosed liability under the federal antitrust act forecloses liability under the State Antitrust Act. Moreover, the Virginia Antitrust Act excludes any activity which is authorized by a Virginia statute. As this Court has already concluded that the City's action was authorized under the *Parker* analysis, the statutory exclusion, which is broader . . . must also apply.

*Id.* at 796.

Thus, this Court concludes in the instant case that the immunities available to the defendants from liability under state antitrust law exactly mirror the immunities available to the defendants from liability under federal antitrust law.

### D. Plaintiff's Sole Potential Cause of Action

For the sake of clarity, the Court's rulings thus far in the instant case bear restatement:

(1) The City of Portsmouth is immune from money damages under the LGAA and immune from injunctive relief under the State Action Doctrine,

(2) Sheriff Waters is immune from both money damages and injunctive relief under the State Action Doctrine, to the extent he is sued in his official capacity, and

(3) that Chief Mook is immune from money damages under the LGAA and also immune from injunctive relief under the State Action Doctrine, to the extent that he is sued in his official capacity.

■ Nevertheless, this Court sees no reason why plaintiff cannot sue Sheriff Waters and Chief Mook when those individuals are really acting as independent legal entities intending solely to advance their own interests. *See generally* Kintner and Bauer, *supra,* at § 76.6. In other words, this Court holds that both the State Action Doctrine and the LGAA protect these officials only when they are acting in an "official capacity," as opposed to their individual capacities.

To illustrate this principle, suppose that Waters and Mook own a restaurant. Further suppose that Waters and Mock engaged in a series of unlawfully anticompetitive activities, in order to squeeze competing restaurants out of business. Obviously, the mere fact that Waters and Mook also happen to work as state and municipal officials, respectively, would not bar competing restaurant owners from suing on antitrust grounds. Now, if in fact Waters and Mook instead operate a business providing security to restaurants, and they engage in anticompetitive activity to squeeze out companies competing to provide security services to restaurants, the same principle should apply again. Thus, in the instant case, the mere fact that Waters and Mock also happen to be government officials does not immunize them from accountability for conduct in which they may have engaged in their individual capacities.

Defendants argue strenuously that the plaintiff's complaint in the instant case makes clear that plaintiff intends to sue Sheriff Waters and Chief Mook in their official capacities only. Concededly, the complaint is ambiguous about whether it intends to sue Waters and Mook in their individual capacities. The allegations in the complaint are so broad, however, that this Court believes that

dismissal is improper at the present time. Although this Court does not pass on whether plaintiff has a viable claim against Mook and Waters in their individual capacities, this Court finds that such a claim could be maintained under present law, and that plaintiff should be given an opportunity to amend if it feels it has such a claim.

### III. Conclusion

Therefore, to the extent that plaintiff may be suing Waters and Mook in their individual capacities, the motion of Waters and Mook to dismiss is **DENIED**, but that denial is **STAYED PENDING FURTHER ORDER OF THE COURT.** Plaintiff is **GRANTED LEAVE** to amend its complaint to indicate unequivocally that it brings the instant lawsuit against Waters and Mook in their individual capacities. Such amended complaint must be filed within thirty (30) days of the date of this order. Unless plaintiff so amends its complaint within thirty (30) days of the date of this order, the Court will vacate the denial of defendants' motion insofar as it applies to Chief Mook and Sheriff Waters and instead will grant the motion.

If plaintiff choses to so amend its complaint, defendants Mook and Waters will have twenty (20) days after service of said amended complaint to file additional responsive pleadings, if any.

The motion of the City of Portsmouth to dismiss the plaintiff's complaint insofar as it pertains to the City is hereby **GRANTED.**

**IT IS SO ORDERED.**